IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| FITZGERALD HUTCHINSON,<br>AIS# 318209, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:23-cv-0492-RAH-SMD |
| | ) | |
| ROLANDA CALLOWAY, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Fitzgerald Hutchinson, an inmate proceeding pro se, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 on August 11, 2023. (*See* doc. 1.) On October 2, 2023, the Magistrate Judge ordered Hutchinson to show cause as to why his Petition should not be dismissed as untimely under the one-year limitation period of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Hutchinson filed his response on November 16, 2023, asserting his actual innocence. The Respondents filed a Reply on May 5, 2026. Upon consideration of Hutchinson's filings, the Respondents' Answer and Reply, and for the reasons stated below, the Petition will be denied as time-barred and dismissed with prejudice.

### BACKGROUND

On September 17, 2018, a jury in the Circuit Court of Lee County, Alabama, found Hutchinson guilty of second-degree rape and first-degree sodomy. (Doc. 12 at 2.) He was sentenced to eighteen years and twenty-five years of imprisonment, respectively. (*Id.*) Hutchinson appealed his convictions, and the Alabama Court of Criminal Appeals ("ACCA") affirmed the judgment, issuing a certificate of

judgment on October 2, 2019. (*See* doc. 12-2.) Hutchinson did not seek a rehearing with the ACCA or further review by the Alabama Supreme Court. (*See* doc. 12 at 2–4.)

On January 4, 2021, Hutchinson filed his first Rule 32 petition centered upon an affidavit allegedly signed by the victim, in which she recanted her allegations against Hutchinson.[1] (Doc. 12 at 3.) That petition was rejected by the trial court and summarily dismissed on October 29, 2021. (*See* doc. 12-5 at 2–5.) He did not appeal.

On or about September 23, 2022, Hutchinson filed his second Rule 32 petition, again asserting newly discovered evidence of his "actual innocence" and he again submitted affidavits from the victim and her mother, as well as several medical records from the victim. (Doc. 12 at 3; *see also* doc. 12-9.) The petition was summarily dismissed by the trial court on February 10, 2023, for failing to pay the required filing fee. (*See* doc. 12-8.)   He did not appeal.

Hutchinson filed a third Rule 32 petition on March 10, 2023, which raised many of the issues already ruled upon in his first petition. (Doc. 12-5 at 1.) This petition was summarily dismissed on March 8, 2024, for failing to provide clear and convincing evidence regarding the alleged discovery of new evidence. *State of Alabama v. Hutchinson*, CC-2016-534.62, Dkt. No. 13 (Cir. Ct. Ala. 2024).  Again, he did not appeal.

Hutchinson signed the instant federal petition on August 11, 2023, which was docketed five days later on August 16, 2023. (*See* doc. 1.)

---

[1] The Court notes from the ACCA's memorandum opinion that both the victim and her mother, the purported authors of these affidavits, suffer from intellectual disabilities. (*See* doc. 12-1 at 2–7.) According to a statement by the trial court, the victim has an IQ of 40 and functions at a level equivalent to an 8-year-old child. (Doc. 12-5 at 4.)

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") contains the following time limitations for federal habeas petitions:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Under 28 U.S.C. § 2244(d)(2), AEDPA's one-year limitation period is tolled during the pendency of a properly filed state court petition concerning the judgment or claims in the instant petition. *Id.*

Hutchinson's first Rule 32 petition was not filed until January 4, 2021, over three months after the federal limitation period had expired. Thus, this provision

3

offers no relief, as Hutchinson cannot toll a limitations period that has already expired. 28 U.S.C. §§ 2244(d)(1)(A), (2); *McCloud v. Hooks*, 560 F.3d 1223, 1227 (11th Cir. 2009) (stating that a petition for post-conviction relief under Alabama law cannot toll a limitation period that had expired).

The tolling provisions of 28 U.S.C. § 2244(d)(1)(B)-(D) provide no safe harbor either. Nothing credibly suggests that there was unlawful state action that impeded Hutchinson from filing a timely petition, *see* § 2254(d)(1)(B); Hutchinson presents no claim resting on a "right [that] had been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review," *see* § 2254(d)(1)(C); and Hutchinson submits no ground for relief with a factual predicate not discoverable earlier with due diligence, *see* § 2254(d)(1)(D).[2] As such, Hutchinson has not shown his entitlement to statutory tolling.

The limitation period in federal habeas proceedings may be equitably tolled "when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable with diligence." *Steed v. Head*, 219 F.3d 1298, 1300 (11th Cir. 2000); *see also Damren v. Fla.*, 776 F.3d 816, 821 (11th Cir. 2015). A petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010).

---

[2] Although neither party suggests that the affidavits reset the limitations period, the Court briefly addresses that possibility. Under § 2244(d)(1)(D), the clock begins when the factual predicate "could have been discovered through the exercise of due diligence," not when it was later discovered or memorialized. *Melson v. Allen*, 548 F.3d 993, 999–1000 (11th Cir. 2008), *vacated on other grounds*, 561 U.S. 1001 (2010), (rejecting reliance on post hoc affidavits where the underlying facts were previously knowable); *Cole v. Warden, Ga. State Prison*, 768 F.3d 1150, 1155 (11th Cir. 2014) (limitations period runs from knowledge of "vital facts," not their later legal significance). Here, the factual predicate was known at the time of trial—at the latest, when the witness allegedly testified falsely, if not at the time of the alleged rape. Moreover, a subsequent recantation constitutes, at most, impeachment evidence "a step removed from evidence pertaining to the crime itself," and does not establish delayed accrual or a miscarriage of justice. *Calderon v. Thompson*, 523 U.S. 538, 563 (1998).

The Eleventh Circuit has made clear that "[t]he burden of proving circumstances that justify the application of the equitable tolling doctrine rests squarely on the petitioner" and "[m]ere conclusory allegations are insufficient to raise the issues of equitable tolling." *San Martin v. McNeil*, 633 F.3d 1257, 1268 (11th Cir. 2011). Thus, "the allegations supporting equitable tolling must be specific and not conclusory." *Hutchinson v. Florida*, 677 F.3d 1097, 1099 (11th Cir. 2012).

In the instant petition, Hutchinson does not raise equitable tolling, and nothing in the record suggests that such relief is warranted. Because Hutchinson bears the burden of establishing both diligence and extraordinary circumstances, the Court finds no basis to apply equitable tolling.

Hutchinson's sole argument in response to the untimeliness of his petition is that he is innocent of the offense of conviction. (Doc. 16 at 2.) He avers that forensic documents, included as factual support for his two claims of ineffective assistance counsel, "clear him as the aggressor in the attack and that DNA excluded him for the list of suspect(s) to the alleged crime," and that he "will suffer a fundamental miscarriage of justice [unless] the [C]ourt [were] to hear his claim on the[] merits . . . ." (*Id.*) That is, he argues that his actual innocence is an exception to the AEDPA's general time-bar. *See* 28 U.S.C. § 2244(d)(1)(A), (D)

Where there is no basis for statutory or equitable tolling, a petitioner can overcome § 2244(d)(1)(A)'s one-year period of limitation when he can show a "fundamental miscarriage of justice." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). A fundamental miscarriage of justice generally occurs "only when a constitutional violation has probably resulted in the conviction of . . . [an] innocent [person]." *Carruth v. Comm'r, Ala. Dep't of Corr.*, 93 F.4th 1338, 1355 (11th Cir. 2024) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar," or, as in this case, the "expiration of the [§

5

2254(d)(1)(A)] statute of limitations." 569 U.S. at 386. "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 401 (quoting *Schlup*, 513 U.S. at 298).

This exception is exceedingly narrow in scope, as it concerns a petitioner's "actual" innocence rather than his "legal" innocence. *See Calderon v. Thompson,* 523 U.S. 538, 540; *Murray v. Carrier,* 477 U.S. 478, 495–96 (explaining that a "fundamental miscarriage of justice" occurs "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent"). "To be credible, a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (citing *Schlup*, 513 U.S. at 324). Thus, a petitioner will be considered actually innocent only if he can demonstrate that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence presented in his habeas petition." *Id.* (internal quotations omitted). In evaluating this new evidence, a habeas court "may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *House v. Bell*, 547 U.S. 518, 537 (2006) (quotation marks and citation omitted). Because of this high standard, "in virtually every case, the allegation of actual innocence has been summarily rejected." *Schlup*, 513 U.S. at 324 (internal quotations omitted).

The "exceedingly narrow" gateway for establishing actual innocence requires a petitioner "(1) to present new reliable evidence that was not presented at trial, and (2) to show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence." *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1011, 1013 (11th Cir. 2012) (per curiam) (cleaned up); *see also McQuiggin*, 569 U.S. at 386 ("[A] petitioner does not meet

6

the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." (quoting *Schlup*, 513 U.S. at 329)).

Here, Hutchinson primarily relies upon affidavits and certain medical records in support of his actual innocence assertion. The medical records attached to Hutchinson's Reply do not support Hutchinson's assertion and fail in every respect in establishing a fundamental miscarriage of justice that would open the gateway.

First, Hutchinson asserts that the medical records "show that he was not the person[,] and or no DNA matched his DNA." (Doc. 16 at 2.) However, the referenced documents were produced in discovery in his criminal case—which was long available to him (*see* doc. 12-3 at 6)—and was not a rape kit or any form of medicolegal forensic DNA comparison analysis that could either inculpate or exculpate a person in a rape. Rather, the referenced documents are standard medical records consisting of (1) immunology testing, (2) urinalysis, and (3) a point-of-care pregnancy test. The only portion involving "DNA" is the immunology panel, which utilized real-time polymerase chain reaction ("PCR") methodology (Cobas 4800, Roche Diagnostics) to test for the presence of bacterial DNA associated with Chlamydia trachomatis ("CTDNA") and Neisseria gonorrhoeae ("NGDNA"). (*See* doc. 1-1 at 11.) These are diagnostic tests for sexually transmitted infections and are not tests for the presence of human DNA, and they certainly are not used to identify or exclude a particular individual as a criminal suspect. Indeed, the report itself expressly cautions that, at least with respect to the CTDNA swab, "[t]his test is not recommended for the evaluation of suspected sexual abuse, for other medicolegal indications, or for evaluation of children under the age of consent." (*Id.* at 17.) In short, the testing neither sought nor detected the existence any human DNA, even the victim's DNA, and it cannot, as a matter of science or law, be used to identify, include, or exclude Hutchinson as a contributor to any biological evidence, much

7

less does it serve to suggest a fundamental miscarriage of justice in this case. And further still, this evidence is not new, as it was provided to Hutchinson in pre-trial discovery during his criminal case. (*See* doc. 12-6 at 6 n. 2.)

Second, Hutchinson provides affidavits from the victim and her mother—both of whom are intellectually disabled—dated October 16, 2023, in which the victim recants her allegations.[3] (Doc. 16-1 at 3–4; *cf.* doc. 10-1 at 1–2.) As a general rule, "recantations are viewed with extreme suspicion by the courts." *United States v. Santiago*, 837 F.2d 1545, 1550 (11th Cir. 1988). And this is especially true when the recantation comes from someone with severe intellectual disability challenges, such as the victim here.

The Lee County Circuit Court previously addressed a nearly identical 2020 recantation by the same victim during Hutchinson's Rule 32 proceedings. (Doc. 12-5 at 3–5.) In dismissing that claim, the state court noted several factors weighing against the reliability of the recantation, including the intellectual disabilities of both the victim and her mother, the suspicious timing of the affidavits, and the consistency of the victim's testimony during the trial. (*Id.*) This Court further observes that the materials submitted here appear to be the third iteration of these affidavits filed across various proceedings, featuring near-identical prose and structure. (*Compare* doc. 16-1 at 3–4, *with* doc. 12-3 at 10, *and* doc. 12-9 at 8.) Such boilerplate recantations, appearing years after the fact and contradicting sworn trial testimony, lack the *trustworthy* and *reliable* character required to pass through the *Schlup* gateway. When weighed against the totality of the evidence presented at trial, these materials fail to establish that "it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327.

---

[3] Again, the victim purportedly has an IQ of 40. And the victim's mother and Hutchinson share a child together. (Doc. 12-5 at 4.)

Finally, Hutchinson further points to a forensic report from the Alabama Department of Forensic Sciences ("ADFS") regarding physical evidence collected from the scene. (Doc. 1 at 13–14.) This report indicates that the genetic traits detected from a pair of glasses—that the victim reportedly broke when Hutchinson struck her face during the alleged rape—originated from a single female source matching neither the profile of Hutchinson nor the victim. (Doc. 1-1 at 21–23.) The report also concluded that no semen was found on the comforter lining the bed upon which the alleged rape occurred. (*Id.*). Similar to the victim's medical report, this forensic report is contained in the record of Hutchinson's direct appeal, and therefore is not new. (*See* doc. 18 at 4.) But further, and more importantly, the author of the forensic report, Joseph Lee, testified to the report's DNA results at Hutchinson's criminal trial and explained to the jury the various environmental factors that could be responsible for the lack of DNA. (*Id.* at 4–5.) So not only did the jury already hear about the DNA results, the jury weighed that evidence and still concluded that Hutchinson was guilty.[4] A credible actual innocence claim must be based on "new evidence" that was "not presented at trial." *Calderon*, 532 U.S. at 538, 559. Here, that is simply not the case.

In summary, Hutchinson presents no new exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence. Consequently, he has failed to meet the rigorous standard for the actual innocence exception to the statute of limitations.

---

[4] Though this played out at trial, the Court notes that the lack of DNA discovered at the scene is not necessarily indicative of innocence. Specifically, the Court highlights that the victim's DNA was not discovered at the scene either, and there is no allegation that DNA from another male was present to suggest someone else was responsible for the crime, which is typically the theory behind a successful actual innocence claim.

## CONCLUSION

For the reasons stated above, it is **ORDERED** that the Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254 is **DENIED** as time-barred and **DISMISSED** with prejudice. Because Hutchinson has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not be issued. 28 U.S.C. § 2253.

**DONE** on this the 17th day of June 2026.

R. AUSTIN HUFFAKER, JR.
CHIEF UNITED STATES DISTRICT JUDGE